IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Bo Anderson Taylor, #316071 ) | Civil Action No. 8:08-2072-HMH-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Kelvin Myers "SGT.," Stan Burt ) | |
| "Warden," Jones "SGT.," and Simmons ) | |
| C/O, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment. [Doc. 24.] The plaintiff has pled claims for excessive force and racial discrimination and possibly for confiscation of personal papers. The undersigned entered an original recommendation that the case should be dismissed *without prejudice* for a failure to exhaust administrative remedies. [Doc. 42.] The defendants objected that the Court had not performed an analysis of the substantive merits of the plaintiff's claims. The district court remanded the matter for such a consideration. [Doc. 44.]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all

pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

I. **Exhaustion of Administrative Remedies**

The defendants contend that the plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006), the United States Supreme Court held that the PLRA exhaustion

requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id.* (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id.*

The Court takes notice, and it is undisputed, that in order to exhaust the South Carolina Department of Corrections ("SCDC") administrative remedies, an inmate must fill out a Form 10-5, Step 1 grievance, and give the form to the Institutional Inmate Grievance Coordinator within fifteen days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a, Step 2 Request for Responsible Official Review, with the Inmate Grievance Coordinator within five days of the receipt of the response from the Warden. A responsible official has sixty days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e.

The defendants have submitted evidence that the plaintiff has only submitted a Step 1 Grievance concerning any of the factual allegations predicate to the claims in his Complaint. (Bodison Aff. ¶¶ 8, 11.) There is further evidence that the Grievances were

"returned unprocessed because the [plaintiff] did not pursue an informal resolution prior to filing the Grievance, because he failed to provide necessary information and because he did not file his Grievance within 15 days of the incident." (Bodison Aff. ¶ 11.) The plaintiff took no further action on this or other grievances. In fact, it appears as he might have indicated on, at least, one of the returned grievances that he had accepted the action taken. (Bodison Aff. Ex. at 5.)

To the defendants' evidence and argument, the plaintiff has made essentially no response. He summarily states that he "would like to bring from one to 5 Step One Grievances that has made it, filed by Mr. Taylor, on October 20, 2008 Mr. Taylor's cases where [sic] re-opened." (Pl. Resp. Summ. J. at 3.) Even still, these are only Step 1 Grievances, which do not qualify as proper or complete exhaustion. The Court has reviewed the additional materials submitted with the plaintiff's response and they no better reflect complete exhaustion than the three Grievances initially submitted with the Complaint. [Cf. Doc. 1 with Docs. 28, 34.] In fact, the plaintiff has submitted, with his response to summary judgment, a letter from Ann Hallman, in the Inmate Grievance Branch, which expressly indicates that one grievance will *not* be re-opened[1] and, to the extent others have been reopened, they remain, as of yet, unresolved. [Doc. 34, Attach. 1.] There is no evidence of a formal Step 2 Grievance and, as the letter indicates, the

---

[1] This is grievance number 1887-07, which neither relates to the failure to protect claim nor the failure to return personal and legal materials. (See Compl. Attach. 2.) No informal resolution was attempted. And, there is no evidence that the plaintiff filed a Step 2 Grievance or even a proper Step 1 Grievance, after the initial form was returned unprocessed.

plaintiff had not even properly completed the Step 1 procedure concerning any of his allegations. This is not evidence of complete exhaustion.

Moreover, in his Complaint, the plaintiff had previously conceded that, as of the time of filing, he had not proceeded any farther than his Step 1 Grievance. With his Complaint he submitted three Step 1 Grievances, all of which were returned unprocessed. (Compl., Attachs. 1, 2, 3.) There is no evidence that he filed a Step 2 Grievance or otherwise appealed the determinations reflected, prior to filing. In Paragraphs II.D of the Complaint, he admitted that he had not received a final agency/departmental/institutional answer or determination concerning these matters. *Id*. His evidentiary submissions at summary judgment do not alter the Court's view of that concession.

It should be noted that "[t]he fact that a grievance was unprocessed, without more, is insufficient to show that Respondents prevented Petitioner from exhausting his administrative remedies." *Bryan v. South Carolina Dept. of Corrections*, 2009 WL 702864, at *3 (D.S.C. March 16, 2009); *see also Peoples v. SCDC*, 2008 WL 1902718, at *1 (D.S.C. April 28, 2008). In other words, it cannot be said, in this case, that administrative remedies were simply unavailable to him.

It is true that, although "there is no futility exception to the PLRA's exhaustion requirement," *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir.1999), the plain language of the statute requires that only "available" administrative remedies need be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it.

*See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir.2004); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (holding that inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir.2001) (allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies); *Arnold v. Goetz*, 245 F. Supp. 2d 527, 538-39 (S.D.N.Y. 2003) (finding a prisoner who was told that an inmate grievance process existed, but who was frustrated by officials in his attempts to learn how to use it, did not have recourse to an "available" administrative remedy). But a returned and unprocessed grievance does not necessarily render remedies "unavailable." *See Peoples*, 2008 WL 1902718, at *1. The plaintiff, in this case, was free to file a Step 2 Grievance and appeal the determination not to process the initial grievance. *See id.* It appears, however, that the plaintiff did nothing. Accordingly, the case must be dismissed.

The Court has reviewed the grievances presented by the plaintiff, and none of the plaintiff's claims, in this present suit, have been fully and properly exhausted, prior to the filing of the Complaint, as required. *Woodford*, 126 S. Ct. at 2386. In his objections to the Court's original Report and Recommendation the plaintiff renews his complaint that the defendants improperly refused to process his step one grievances. [Doc. 45.] The Court cannot discern any cogent argument or evidence to this end. As far as the Court

can determine, from the evidence submitted, the plaintiff failed to properly follow procedure and his grievances were returned as a result. [See, e.g., 34-1, 45-1.] The plaintiff disputes that these determinations were proper but has not put forward any evidence as to why or that he ever contested their impropriety.

Accordingly, the Court would still recommend dismissal for failure to exhaust administrative remedies. The Court declines to recommend that a failure to process any of his grievances renders administrative remedies legally unavailable such that this case might proceed.

If, however, the district court rejects this recommendation the undersigned would recommend dismissal based on an analysis of the merits of the plaintiff's claims.

**II.     Excessive Force Claim**

The plaintiff claims that the defendants violated his Eighth Amendment right to be free from excessive force. Specifically, he contends that he was assaulted by two other inmates. The plaintiff claims that after certain of the defendant officers stopped the altercation, they removed the plaintiff from his cell and transferred him to a holding cell. *Id.* at 3. The plaintiff complains that while in handcuffs he was forced to the ground "face first" and was maced. *Id.* The plaintiff requested his inhaler and was then taken to medical. *Id.* at 4. The plaintiff alleges, however, that while in route he was run face first into a gate pole. *Id.* He contends that the impact split his left eye and head "about a [sic] inch long." *Id.* The plaintiff alleges that he was returned to a holding cell where he was maced again for complaining about his swollen hand and lack of inhaler. *Id.*

To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The objective component requires the inmate to prove that the use of force was more than *de minimis* or, in the alternative, that it was repugnant to the conscience of mankind. *Id.* at 9-10. *De minimis* injury can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections. *See Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir.1994).

### A. Subjective Component

To prove the subjective component of his claim, the plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The state of mind required in excessive force claims is "wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). "Put differently, the core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir.2008) (internal quotations and citation omitted).

In *Whitley*, the Supreme Court set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness": (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321 (internal quotations omitted) (applying these factors in a prison riot case); *see Hudson*, 503 U.S. at 7 (extending the *Whitley* standard "to all allegations of excessive force").

So the question here, as always, is whether, assuming the plaintiff's version of the facts are believed, a reasonable jury would be justified in concluding that there was no reason for the force used; that the force was, thus, disproportionate to any perceived threat; and, therefore, was applied sadistically and maliciously and not in a "good-faith effort to maintain . . . discipline" and security, *Iko*, 535 F.3d at 238. As stated, the plaintiff claims that the defendants assaulted him while he was immobilized in handcuffs. Specifically, he claims to have been maced twice in the face, slammed into the concrete, and run into a pole. The defendants contend that it was necessary to take the plaintiff to the ground and mace him the first time because he became "very argumentative and aggressive and tried to run away." (Bodison Aff., Attach. at 1.) In regards to the second burst of pepper spray while in the holding cell, the defendants have submitted evidence that the plaintiff was kicking the cell door, using profanity, and refused to obey orders to stop. *Id.* at 2. In regards to both incidents, the plaintiff either disputes being

10

uncooperative or suggests that his resistance amounted to no more than complaints concerning his injuries, which were going unheeded by the officers. Applying the *Whitley* factors, it is possible to view the case, as to the subjective element of the excessive force claim, as still containing some issues of fact. If the plaintiff was, in fact, being cooperative as he contends and the officers intentionally ran him into a pole or slammed him to the ground or maced him in the face, that degree of force seems incongruous with an inmate who is merely raising some verbal objection to the situation and not otherwise physically resisting. On the other hand, the degree of force alleged is not so severe as to be disproportionate if the defendants' version of the plaintiff's resistance is at all accurate. The officers were more than entitled to force the plaintiff's compliance with orders if he was resisting constraints, refusing to obey, or trying to run away. *Iko*, 535 F.3d at 238.

But, the Court may not decide it – whether the plaintiff's or the defendants' accounts are true. As to the whether the defendant officers acted wantonly, it seems only a jury could measure the matter. The Court sees innumerable cases exactly like the present one. The inmate alleges largely unprovoked force resulting in some degree of damage or pain and the defendant rejoins that the force was necessary to constrain the recalcitrant inmate. The truth is most certainly somewhere in between and not for the Court to determine on summary judgment. The difficulty lies in determining whether there is evidence, which if believed, implicates constitutionally actionable conduct. The cases, however, could almost always be characterized as a battle of competing accounts

11

suitable only for resolution by the jury. While courts seem hesitant to credit the naked testimony of an inmate, the Fourth Circuit has reminded that a prisoner's account of events is probative even when it recounts events which are hard to believe. *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991). Just like in any other case, a jury, in fact, may find the inmate more credible than the officers.

### B. Objective Component

The Court, however, would recommend summary judgment because the plaintiff cannot establish the objective element of his claim – that he suffered something more than a *de minimis* injury. First, the plaintiff has alleged, at most, a laceration on his head. He has not submitted evidence of that or any other injury, either from the take down, the pole impact, or the mace bursts. He has not submitted medical records or other corroborating testimony. But even crediting his own personal representation, that type of injury is rightly characterized as *de miminis*. *See Taylor v. McDuffie,* 155 F.3d 479, 484 (4th Cir. 1998) (holding "temporary swelling and irritation is precisely the type of injury this Court considers de minimis."); *Stanley v. Hejirika,* 134 F.3d 629, 637-38 (4th Cir.1998) (holding "bruising of his right arm, left jaw, left and right wrists and back, and a tooth which was loosened" constituted de minimis injury); *Cox v. Gaskins,* 2003 WL 23857306, at *2 (E.D.N.C. May 30, 2003) (finding that **two lacerations** to plaintiff's head and an injury to his nose were *de minimis* injuries). Moreover, the Fourth Circuit has held that the United States Constitution permits small quantities of pepper spray, or mace, to be used to control recalcitrant inmates. *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996). The

defendants have submitted evidence that the officers deployed no more than 8 grams of chemical munitions towards the plaintiff. (Bodison Aff. ¶ 9.) Even if the amount was twice as much, it would be considered a small quantity and not constitutionally relevant. *See Townsend v. Anthony*, 2006 WL 2076920, at *9 (D.S.C. 2006) (finding 20 grams to be a small amount)(unpublished); *see also Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir.1996). Furthermore, in this record there is no evidence, medical or otherwise, that the plaintiff suffered anything more than a *de minimis* injury from the chemical munitions administered.

Accordingly, no reasonable jury could conclude that the plaintiff's injuries were more than *de minimis*. *See Anderson,* 477 U.S. at 248 (holding that summary judgment is appropriate "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party").

### III. Racial Discrimination

The plaintiff has also made generalized allegations that prison officials have mistreated him and others as a result of racial animus and for their apparent affiliation with gang activity. The plaintiff contends that white inmates are beaten and abused, ostensibly by black inmates. There is literally no evidence or even specific allegation from which a jury could conclude that any of the defendants acted in a discriminatory fashion by allowing such mistreatment. The plaintiff has not explained much less supported the accusation in any respect. He has not cited the details of any specific

incident or any phrase or name or epithet or any other evidence that actions were taken against him on account of his race. No issues of fact exist as to this claim.[2]

IV. **Return of Legal Materials**

The Court can hardly make out this claim. To the extent it was ever originally pled (see Compl. at 7-8), it seems all but abandoned. The plaintiff, in his response to summary judgment, has produce no evidence that any papers of his were taken and not returned. Critically, however, even to the extent they were, he has neither alleged nor demonstrated that he suffered any prejudice therefrom. To state a claim for denial of access to the courts, the plaintiff must allege both a denial of court access and some prejudice resulting from the denial of access. *See Strickler v. Waters,* 989 F.2d 1375, 1382-1383 (4th Cir. 1993); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding "courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"); *Shango v. Jurich*, 965 F.2d 289, 293 (7th Cir. 1992). The plaintiff has not explained how the alleged removal of such papers has prejudiced him in this or any other case.[3] The lack of prejudice is fatal to his claim, to the extent he ever meant one in the first instance.

---

[2] In his objections to the Court's original recommendation, the plaintiff refutes that he has made any claim for deliberate indifference to his safety. [Doc. 45 at 2.]

[3] In a prior motion, the plaintiff suggested that these papers concerned a custody dispute over his child. [Doc. 26.] The plaintiff generally alleges that he cannot get the necessary paperwork from the state system and that the confiscation of the papers by the defendants has affected his ability to protect his rights in his minor child. But, again, the plaintiff has not actually submitted any evidence of any of these allegations. Nor has he explained with any specificity how the outcome of any decision in the underlying state court case has been actually affected by the lack of documents.

## V. State Law Claims

Having dismissed the plaintiff's federal claims, the Court declines to exercise jurisdiction over whatever state law claims the plaintiff may have against the defendants. *See* 28 U.S.C. § 1367(c); *see, e.g., Patterson v. City of Columbia*, 2003 WL 23901761, at *5 (D.S.C. Dec 29, 2003) ("Patterson has raised various state law claims against all Defendants. Because the federal claims must be dismissed, the court declines to exercise jurisdiction over the remaining state law claims.") Thus, the state law claims, if any, are dismissed *without prejudice*.

## CONCLUSION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment [Doc. 24] should be GRANTED and the plaintiff's claims dismissed *without prejudice* for failure to exhaust administrative remedies. If, however, the district court declines to adopt that recommendation, the plaintiff's claims should be dismissed *with prejudice* for failure to create any issues of material fact concerning them.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

October 1, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).